IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-34-D

| | |
|---|---|
| RANDY DINGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| TALMAGES BAGGETT, JR., et al., | ) |
| | ) |
| Defendants. | ) |

On February 28, 2019, Randy Dingle ("Dingle" or "plaintiff"), proceeding pro se, filed a complaint against Talmages Baggett, Jr. ("Baggett"), Ellen B. Hancox ("Hancox"), Ronnie Mitchell ("Mitchell"), Deputy Mickey Locklear ("Locklear"), the Cumberland County Detention Center (the "Center"), Timothy J. Peterkin ("Peterkin"), Ennis W. Wright ("Wright"), Deputy Murphy ("Murphy"), Lieutenant Morrison ("Morrison"), Deputy Walden ("Walden"), Clavion Morning ("Morning"), and William Dancy ("Dancy"; collectively, "defendants") [D.E. 7]. On April 11, 2019, Peterkin moved to dismiss Dingle's complaint for failure to state a claim [D.E. 37]. On May 6, 2019, the Center, Locklear, Mitchell, Morning, Morrison, Murphy, Walden, and Wright moved to dismiss for lack of jurisdiction and for failure to state a claim [D.E. 42] and filed a memorandum in support [D.E. 43]. On May 8, 2019, Baggett and Hancox moved to dismiss on the same grounds [D.E. 46] and filed a memorandum in support [D.E. 47]. On May 9, 2019, Dancy moved to dismiss on the same grounds [D.E. 49] and filed a memorandum in support [D.E. 49-1]. Dingle responded in opposition to defendants' motions [D.E. 41, 54–56]. No defendant replied. As explained below, the court grants defendants' motions to dismiss for lack of subject-matter jurisdiction.

I.

Although Dingle's complaint is not a model of clarity, Dingle alleges that, on or about July 24, 2017, and August 20, 2018, Dingle appeared before Baggett, then a state judge in Cumberland County. See Compl. [D.E. 7] 6–7. Dingle alleges that Baggett told Dingle that he would take Dingle's residence, was upset about Dingle's clothing, and threatened to hold Dingle in contempt of court for his appearance. See id. at 6–7. Dingle also alleges that Baggett refused to look at a decree from a federal bankruptcy judge that disallowed "Ditech Finance LLC" to foreclose on Dingle's residence that Hancox, the Trial Court Administrator for the Cumberland County courts, presented to him. Id. at 6–7. Additionally, Dingle alleges that Baggett and Hancox made various threatening remarks to Dingle because he identifies as Moorish American. See id. at 7.

During the hearing on August 20, 2018, Dingle alleges that Mitchell, an attorney, asked Baggett to order Dingle's eviction. See id. Baggett ordered Sheriff Wright and Lieutenant Morrison to evict Dingle and his wife, Patricia Ellen Watson Dingle ("Patricia"; collectively, the "Dingles"), from their residence. See id. On August 23, 2018, Deputy Locklear put an eviction notice on the front door of the Dingles' "mobile home." Id. On August 24, 2018, Dingle alleges that he went to the Cumberland County Sheriff Department and showed Lieutenant Morrison and Sergeant Morning the bankruptcy court order disallowing foreclosure. See id. at 7–8.

On August 30, 2018, the Dingles went to the North Carolina Division of Motor Vehicles ("DMV") to obtain Patricia's driver license. See id. at 8. While there, Dingle alleges that the "DMV officer" was rude and told him to sit down. See id. Dingle believes that this occurred because Dancy told the other workers who Patricia was when the Dingles entered. See id. Dingle alleges that Dancy is Patricia's "friend/boyfriend." Id.

2

Later that day, as the Dingles prepared to leave their residence to attend a family reunion, they heard banging noises. See id. While Dingle initially believed that someone was breaking into his home, he soon realized that the police had surrounded the home. See id. Deputy Locklear arrested Patricia and "patted and felt all over her." Id. Deputy Murphy also patted down Dingle and put them both in police cars while Deputy Walden, Lieutenant Morrison, and several other unnamed deputies allegedly "ransack[ed]" the Dingles' residence. Id. Dingle alleges that Deputy Murphy threatened to kill him, causing Dingle to "fear for [his] life." Id. at 9. The police eventually took the Dingles to the Center and put them both on bond for what Dingle alleges are "senseless" criminal charges. See id. at 8–9.

Dingle alleges that he has not seen Patricia since August 31, 2018, because she left him for Dancy, who works as a part-time security guard at the federal bankruptcy court. See id. at 9. Dingle also alleges that, on September 4, 2018, various individuals told him that "they" would keep Patricia from him. Id.[1] Additionally, Dingle alleges that Peterkin, his attorney in the federal bankruptcy court, "should have handle[d] this issue in the Cumberland County courts" but "fail[ed] to do so in a timely manner" even though he "understood and knew that the house was paid for." Id. At some point, Peterkin terminated his representation of Dingle. See id.

Dingle seeks approximately $600 million in relief for claims including "disrespect by a judge or officer of the court," "unlawful arrest," "illegal arrest (no warrant)," trespass, excessive bail, cruel and unusual punishment, violation of Dingle's right to a speedy trial, violation of Dingle's freedom of speech, racketeering, and false imprisonment. Id. at 10; see id. at 6.

---

[1] Dingle does not clarify who "they" are in his complaint. See Compl. [D.E. 7] 9 (stating that "Natashia [and] Alonzo Dingle, Jacklyn Faye Carter said that they had [Patricia] and they [were] going to keep her from [Dingle] (her husband)").

3

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. As the party invoking federal jurisdiction, Dingle bears the burden of establishing that this court has subject-matter jurisdiction in this action. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647. A court should grant a motion to dismiss under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (quotation omitted).

As for whether federal jurisdiction exists over Dingle's claims, several defendants contend that Dingle's complaint does not raise a federal question. See [D.E. 42, 46, 49].[2] In his complaint, Dingle alleges that "Title 18 [and] Title 31" provide the bases for federal subject-matter jurisdiction. Compl. [D.E. 7] 5.

---

[2] Peterkin does not move to dismiss for lack of subject-matter jurisdiction. See [D.E. 37]. However, the court may raise the issue of subject-matter jurisdiction on its own. See United States v. Wilson, 699 F.3d 789, 793 (4th Cir. 2012); Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004).

4

Title 18 of the United States Code defines federal crimes and federal criminal procedure. Title 31 of the United States Code governs the United States Treasury, the federal budget, and related matters. Neither Title 18 nor Title 31 provides Dingle with an applicable federal cause of action. Moreover, the parties are not diverse under 28 U.S.C. § 1332. See Compl. [D.E. 7] 1–4. Thus, because Dingle has not met his burden to show that the court has subject-matter jurisdiction over his claims, the court dismisses Dingle's complaint for lack of subject-matter jurisdiction.

Alternatively, to the extent that Dingle seeks to contest his eviction in this court, the "Rooker-Feldman doctrine applies to losers of state foreclosure proceedings." Saimplice v. Ocwen Loan Servicing Inc., 368 F. Supp. 3d 858, 864 (E.D.N.C. 2019); see, e.g., Locklear v. Fed. Home Mortg. Corp., No. 7:16-CV-344-D, 2017 WL 1737634, at *3 (E.D.N.C. May 1, 2017) (unpublished); Hardin v. Bank of Am., N.A., No. 7:16-CV-75-D, 2017 WL 44709, at *3 (E.D.N.C. Jan. 3, 2017) (unpublished); Carmichael v. Irwin Mortg. Corp., No. 5:14-CV-122-D, 2014 WL 7205099, at *3 (E.D.N.C. Dec. 17, 2014) (unpublished); Radisi v. HSBC Bank USA, Nat'l Ass'n, No. 511CV125-RLV, 2012 WL 2155052, at *4 (W.D.N.C. June 13, 2012) (unpublished), aff'd, 479 F. App'x 468 (4th Cir. 2012) (per curiam) (unpublished). The Rooker-Feldman doctrine reflects that "federal district courts have 'no authority to review final judgments of a state court in judicial proceedings.'" Saimplice, 358 F. Supp. 3d at 863 (quoting D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983)); see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Rooker v. Fid. Tr. Co., 263 U.S. 413, 415–16 (1923). Thus, because the Rooker-Feldman doctrine bars this court from sitting in direct review of any state court order that authorized Dingle's eviction, the court dismisses any claim challenging Dingle's eviction for lack of subject-matter jurisdiction.[3]

---

[3] In light of the court's holding under Rule 12(b)(1), the court does not reach the defendants' remaining arguments in support of their motions to dismiss.

In Dingle's responses to defendants' motions to dismiss, Dingle suggests that his claims are brought under 18 U.S.C. §§ 241 and 242. See [D.E. 41] 2–3; [D.E. 54] 2–3. A response brief "is not an appropriate means to request leave to amend a complaint." Jemsek v. N. Carolina Med. Bd., No. 5:16-CV-59-D, 2017 WL 696721, at *12 (E.D.N.C. Feb. 21, 2017) (unpublished) (collecting cases), aff'd, 697 F. App'x 234 (4th Cir. 2017) (per curiam) (unpublished). Moreover, neither 18 U.S.C. § 241 nor 18 U.S.C. § 242 creates a private right of action. See 18 U.S.C. §§ 241, 242; United States v. Oguaju, 76 F. App'x 579, 581 (6th Cir. 2003) (per curiam) (unpublished); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994); El Bey v. Celebration Station, No. 3:02CV461, 2006 WL 2811497, at *3 (W.D.N.C. Sept. 28, 2006) (unpublished), aff'd, 242 F. App'x 917 (4th Cir. 2007) (per curiam) (unpublished). Accordingly, any claim under these statutes fails.

III.

In sum, the court GRANTS the defendants' motions to dismiss [D.E. 37, 42, 46, 49] and DISMISSES Dingle's complaint without prejudice [D.E. 7]. The clerk shall close the case.

SO ORDERED. This 12 day of July 2019.

JAMES C. DEVER III
United States District Judge